BATH TOWNSHIP et al., Appellees,

v.

RAYMOND C. FIRESTONE COMPANY et al.;
Landmark Partners et al., Appellants.

[Cite as *Bath Twp. v. Raymond C. Firestone Co.* (2000), 140 Ohio App.3d 252.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19689.

Decided Sept. 27, 2000.

*Jeffery T. Witschey* and *Frank J. Witschey;* and *Bruce E. Smith,* for appellees.

*Don L. Reynolds,* for appellees David Shafer Oil Producers Inc. and Berman Shafer.

*John K. Keller, F. Daniel Balmert* and *Philip F. Downey,* for appellants.

BAIRD, Presiding Judge.

Appellants Landmark Partners and Landmark 2 Limited Liability Company (hereinafter collectively referred to as "Landmark") appeal from the decision of the Summit County Court of Common Pleas that granted summary judgment to

appellees, Bath Township et al. in an action for declaratory judgment. This court reverses.

## I

On January 11, 1995, the partnership Raymond C. Firestone Co. ("Firestone") recorded a limited warranty deed granting to Ohio State University ("OSU") thirty-two parcels of land in Summit County. The deed reserved to the grantor "all oil and gas rights." The property was burdened, at least in part, by oil and gas leases executed prior to the deed.[1]

On October 6, 1997, OSU sold the premises, directly and indirectly, to various persons, some of whom are appellees herein. Subsequently, Landmark, as Firestone's successor in interest, asserted a right to drill for oil and gas, pursuant to the reservation of the oil and gas rights in the deed. On November 13, 1997, some of the buyers filed an action for declaratory judgment, specific performance, to quiet title, and for injunctive relief. The action sought to determine what mineral rights were retained by Firestone in the deed to OSU, and whether certain oil and gas wells, drilled pursuant to oil and gas leases on the property prior to the Firestone/OSU deed, should be capped and the leases terminated, pursuant to the terms of the leases and of the reservation of mineral rights in the Firestone/OSU deed. Landmark and the lessees of the oil and gas leases were named as defendants.

On April 24, 1998, appellees moved the court for an interpretation of the deed. On May 27, 1998, the trial court issued its interpretation, finding that the grantor had reserved only royalties from the existing leases. Appellants appealed from this order, but the appeal was dismissed for lack of a final order because other claims remained outstanding. On June 1, 1999, the parties filed a joint stipulation of facts with the trial court, and on June 22, 1999, appellees filed a voluntary dismissal with prejudice as to all claims except for the declaratory judgment. Upon entry of the dismissal, all claims had been resolved and Landmark appealed, assigning one error.

## II

"The trial court erred in concluding that the reservation of all oil and gas rights in the deed from Raymond C. Firestone Co. to the Ohio State University did not reserve to the grantor the oil and gas in the property and the right to explore for and drill for that oil and gas."

---

1. To their stipulation of facts filed with the trial court, the parties appended both the deed and the oil and gas leases.

The following rules govern our review of the trial court's interpretation of the Firestone/OSU deed. "The construction of written contracts and instruments of conveyance is a matter of law." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. The trial court's determination on a question of law is reviewed by this court *de novo.* See *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686. "The purpose of contract construction is to discover and effectuate the intent of the parties. * * * The intent of the parties is presumed to reside in the language they chose to use in their agreement." *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949, 952, citing *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. In arriving at the meaning of any part of the deed, the instrument must be read in its entirety in order to give effect to the intention of the parties. See *Stocker & Sitler, Inc. v. Metzger* (1969), 19 Ohio App.2d 135, 142, 48 O.O.2d 254, 257–258, 250 N.E.2d 269, 273. If the language of the deed is clear, the parties' intent can be determined without applying rules of construction. *Seringetti Constr. Co. v. Cincinnati* (1988), 51 Ohio App.3d 1, 4, 553 N.E.2d 1371, 1374–1375.

The instant deed states that the grantor "for valuable consideration paid, grant[s] with limited warranty covenants, to THE BOARD OF TRUSTEES OF THE OHIO STATE UNIVERSITY, * * * the real property described in Exhibit A[,] subject to conditions, covenants, restrictions, reservations, and easements of record." The grant is followed by a reservation clause that reads in its entirety:

"Reserving unto Grantor its successors and assigns, all oil and gas rights appurtenant to the property described herein; provided, however, that as oil and gas leases expire or are otherwise terminated, Grantor, its successor or assigns, shall not renew such leases or otherwise lease or re-lease the oil and gas rights previously covered by the expired or terminated leases, and following the expiration or termination of such leases, Grantor, its successors or assigns, shall by recordable instrument release the portions of the property described herein previously encumbered by said leases from the operation of such leases."

Exhibit A consisted of the legal descriptions of the thirty-two parcels deeded to OSU.

We begin by noting that under Ohio law, it is possible for the total interest in real property to be divided in such a way that the surface estate is severed from the mineral estate. See, generally, *Quarto Mining Co. v. Litman* (1975), 42 Ohio St.2d 73, 71 O.O.2d 58, 326 N.E.2d 676; *Gill v. Fletcher* (1906), 74 Ohio St. 295, 302, 78 N.E. 433, 435; *Pure Oil Co. v. Kindall* (1927), 116 Ohio St. 188, 201–202, 156 N.E. 119, 122. When a deed grants or reserves the minerals, but does not specifically mention the grant or retention of the right to explore for

and extract the minerals, such a right is implied.  *Quarto Mining,* 42 Ohio St.2d at 83, 71 O.O.2d at 63, 326 N.E.2d at 683–684.

■    Appellants maintained that the reservation of "all oil and gas rights" meant that the grantor had retained a severed mineral estate and the right to retrieve the minerals, subject only to the explicit provision preventing the grantor from renewing existing leases or re-leasing the areas then under lease.  However, the trial court determined that the parties' intent was clear from the deed itself and concluded that the grantor intended to reserve to itself only the royalties resultant from then-existing leases.  This court disagrees.

■    The trial court relied on three aspects of the deed to find that "all oil and gas rights" meant all royalties from the existing oil and gas leases.  First, the deed used the term "reserving" rather than the term "excepting" to describe · what the grantor would retain.  The trial court apparently accepted appellees' view that traditionally the term "reserving" denoted that the grantor carved out a new right for himself, whereas the term "excepting" indicated that the grantor retained part of the estate granted.  Under this theory, a grantor reserves rights but excepts portions of the property itself.  Thus, in the instant deed, the reserved interest could not include the oil and gas under the property (the oil and gas estate), but only certain rights relating to these minerals.  However, the use of the term reservation or exception is not determinative of the interest retained but that interest must be construed in light of the entire instrument and the circumstances of the case.  *Gill, supra,* paragraph one of the syllabus; *Campbell v. Johnson* (1993), 87 Ohio App.3d 543 at 547, 622 N.E.2d 717, at 721–722.  The terms are often used interchangeably.  1 Kuntz, A Treatise on the Law of Oil and Gas (1987) 406–408, Section 14.2.

Second, the trial court observed that the deed used the term "oil and gas rights" to describe the interest reserved, rather than language specifying that the grantor retained the oil and gas, as well as the right to explore and drill for these minerals.  The appellees, in argument to both the trial court and this court, pointed to various Ohio cases in which the courts have determined that the grantor actually accomplished the severance of the mineral estate, including the right to recover the minerals.  See, *e.g., Everett Co. v. Jadoil, Inc.* (Jan. 26, 1987), Licking App. No. CA–3211, unreported, 1987 WL 5766; *Johnson v. Stone Container Corp.* (Mar. 21, 1989), Coshocton App. No. 88–CA–26, unreported, 1989 WL 28695.  Appellees noted that in each case the deed described the severed interest explicitly in terms of granting/reserving the minerals as well as the right to enter the land to recover the minerals.  From this, appellees argued and the trial court agreed that the instant deed is insufficient to accomplish what appellants assert the grantor intended.  This court does not agree.

It is clear from the cited cases that, although the deeds explicitly referenced both the minerals and the right to recover them, the courts described the thing granted or retained as "the mineral rights." See, *e.g., Johnson, supra* ("Said deed reserved to appellee Stone Container the mineral rights to the oil and gas underlying said real estate"); *Jadoil, supra* ("The deed conveying the Pierce Tract contained no reservation of oil and gas rights"; "Everett initiated the instant litigation by filing an amended complaint asking for a judgment declaring that Everett was the owner of the oil and gas rights"); see, also, *Ohio Sand & Gravel Co. v. Masheter* (1964), 176 Ohio St. 327, 27 O.O.2d 272, 199 N.E.2d 573, paragraph one of the syllabus (referencing "the owner of the fee of mineral rights in the property"). Although there is little Ohio case law on point, "the terms 'mineral rights,' 'oil rights,' 'oil and gas rights,' or words of similar import have been construed to grant or reserve a full mineral interest [*i.e.,* ownership and rights incident thereto]." 1 Kuntz (1987) 483, A Treatise on the Law of Oil and Gas, Section 16.2.

The sole Ohio case that supports the trial court's conclusion is *Back v. Ohio Fuel Gas Co.* (1953), 160 Ohio St. 81, 51 O.O. 1, 113 N.E.2d 865. The Ohio Supreme Court in *Back* found that an instrument of conveyance that granted "oil and gas rights" had "the earmarks of a license." *Id.* at 86, 51 O.O. at 3, 113 N.E.2d at 867. The court thus concluded that a subsequent buyer of the surface estate had constructive notice of the prior grant, even though the instrument was filed in the county lease records rather than in the deed records. *Id.* at 89, 51 O.O. at 4–5, 113 N.E.2d at 869. Although the Supreme Court concluded that the "instrument in question is a license rather than a deed of conveyance," *id.,* only the syllabus law is binding on this court. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 517, 715 N.E.2d 1062, 1113, quoting S.Ct.R.Rep.Op. 1(B) ("The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication"). The syllabus in *Back* does not address the issue of whether a grant or reservation of "oil and gas rights" constitutes a grant or reservation of a license or of the mineral estate. Furthermore, in an opinion issued after *Back,* the Supreme Court has itself presumed that a person may own "the fee of mineral rights in the property." *Masheter, supra,* paragraph one of the syllabus.

Third, the trial court construed the explicit restriction of the grantor's right to renew the existing leases or re-lease those leased parcels as evidence of the grantor's intent "to *reserve oil and gas rights only to the extent of the existing oil and gas leases.*" The trial court apparently determined that of all the rights a lessor would normally possess, the grantor agreed to refrain from exercising all but one right, namely the right to receive royalties from the leases.

■ However, by the plain language of the deed the grantor reserved "all oil and gas rights appurtenant to the property described herein." The property described was the entire deeded property, consisting of thirty-two parcels, whose description was included in Exhibit A to the deed. The deed states that portions of the conveyed property were subject to leases at the time of the deed. Thus, a reservation of "all oil and gas rights appurtenant to the property described herein" cannot reasonably be construed as limited to the royalty rights of the lessor, separate and distinct from the rights inherent in ownership of the oil and gas.

■ This court concludes that a reservation of "all oil and gas rights" is effective to reserve to the grantor the entire oil and gas estate, as well as the rights related thereto. The deed clearly reserved to the grantor all oil and gas rights, including rights of ownership of the oil and gas under the entire deeded property. The only restriction on grantor's reserved oil and gas rights appurtenant to the entire property was contained in the limiting clause, which reads:

"[P]rovided, however, that as oil and gas leases expire or are otherwise terminated, Grantor, its successor or assigns, shall not renew such leases or otherwise lease or re-lease the oil and gas rights previously covered by the expired or terminated leases, and following the expiration or termination of such leases, Grantor, its successors or assigns, shall by recordable instrument release the portions of the property described herein previously encumbered by said leases from the operation of such leases."

This clearly restricts the grantor's right to renew the existing leases or to re-lease the property subject to the existing leases, and obliges the grantor to record the termination of each lease as it occurs. However, these explicit restrictions do not terminate the grantor's other oil and gas rights.

■ By the deed, the grantor retained all oil and gas rights appurtenant to the entire property. This includes ownership of the oil and gas; the right to receive royalties pursuant to the leases; the right to control the existing leases to the extent not prohibited in the deed; the right of the grantor to drill and explore for oil and gas on the entire property to the extent not prohibited by the existing leases; and the right to lease for oil and gas drilling any portion of the property not encumbered by leases in existence at the time the deed was executed.

Appellants' assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for entry of judgment accordingly.

*Judgment reversed*
*and cause remanded.*

BATCHELDER, P.J., and WHITMORE, J., concur.