JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from a judgment and post-trial ruling entered by Judge Nancy R. McDonnell after a jury returned a verdict in favor of appellees Penton Media, Inc. ("Penton") and Deborah Santora nka Parro ("Parro") on appellant Joseph Stepic's complaint for sexual harassment. Stepic claims the verdict was against the weight of the evidence, and that it was error to exclude certain evidence and to permit the testimony of a defense expert. We affirm.
 {¶ 2} Stepic filed a complaint against Penton and Parro alleging sexual harassment, retaliatory discharge, intentional infliction of emotional distress, disability discrimination, and gender discrimination. In July of 1999, a jury found Penton and Parro liable on the claims of sexual harassment and retaliatory discharge, but the verdict was reversed on appeal.[1] The Penton I court found that Stepic had failed, as a matter of law, to prove his retaliation claim and also reversed part of the judgment on the sexual harassment claim. The court found that Stepic's August 1996 sexual harassment allegations were barred because he failed to take advantage of company procedures and that evidence relevant to the retaliation claim affected the sexual harassment claim. Therefore, the Penton I court remanded the case for retrial of Stepic's allegations of sexual harassment that occurred after August of 1996.
 {¶ 3} At the second trial Stepic testified that he was harassed by Melanie Burke, a female co-worker who flirted with him, expressed a sexual interest in him, and constantly stared at him or made attempts to be near him while working or on breaks. He presented corroborating testimony from co-workers who testified that he attempted to avoid Burke's advances, but that she continued to impose herself on him, including massaging his shoulders and arms. He complained to his supervisor, Parro, about Burke's conduct in January of 1997, and Parro reported the matter to the human resources (HR) manager. In July of 1997, Stepic again complained to the HR manager about Burke's conduct, and he was allowed to adjust his overtime schedule in order to avoid contact with her. He claimed, however, that this arrangement quickly unraveled because shortly thereafter he was transferred to a different shift and his overtime schedule again overlapped with her shift.
 {¶ 4} Penton presented evidence that it responded to Stepic's January 1997 complaint by instructing Burke, who denied the allegations, to maintain a professional demeanor with Stepic and to avoid physical contact with him. Parro and the HR manager also testified that they followed up with Stepic and he told them that things were going well until he again complained in July 1997. Penton also presented evidence that Stepic's July complaint did not contain allegations of inappropriate language or touching, only that Burke stared at him and passed by him frequently in the hallway. There was also evidence from both parties that Stepic was "intense" and "moody" and had some difficulty in interpersonal relationships.
 {¶ 5} The jury returned a verdict for Penton and Parro, and Stepic's subsequent motion for judgment notwithstanding the verdict or for new trial was denied. He asserts four assignments of error, claiming: (1) that the judge should have granted his motion for a new trial because the verdict was against the weight of the evidence; (2) that the judge erred in granting a motion in limine to exclude evidence of sexual harassment complaints involving other Penton employees; (3) that the judge erred in excluding evidence of a letter written to Stepic by women employees other than Burke and by excluding evidence of the commonplace use of profanity at Penton; and (4) that the judge erred in allowing an expert witness to testify.
 I. WEIGHT OF THE EVIDENCE {¶ 6} When a civil jury verdict is challenged as being against the manifest weight of the evidence, we review the record to determine whether it is "supported by some competent, credible evidence * * *."[2]
Our review includes analysis of the quality of evidence and witness credibility, but we undertake such review while giving deference to the factfinder's ability to observe witnesses and assess the proceedings personally.[3] Therefore, even though our review is broad, we will not reverse a civil judgment on manifest weight grounds unless the evidence cannot be interpreted in a way that supports the verdict.[4]
 {¶ 7} Stepic claims that the sexual harassment created a hostile work environment, which requires him to show that he was subject to unwelcome harassment based on sex, that the conduct was "sufficiently severe or pervasive" to affect the conditions of his employment, and that his supervisors should have known of the harassing conduct.[5] Whether harassment is "severe or pervasive" is determined on the "totality of all the facts and surrounding circumstances."[6] A defendant can establish an affirmative defense by proving that it maintained and publicized adequate policies and procedures for addressing harassment claims and that the plaintiff unreasonably failed to take advantage of those procedures.[7]
 {¶ 8} Stepic contends that he presented unrefuted evidence of severe and pervasive harassment because his co-workers corroborated his testimony that Burke spent inordinate amounts of time in his work area and touched him inappropriately. There was also evidence, however, that the conduct was misinterpreted, that Penton addressed whatever problem existed in January 1997 and believed the issue resolved after following up with Stepic, and that his subsequent complaints were highly subjective and equivocal. The July 1997 complaint alleged that Burke was staring at him and that she was stalking him by repeatedly passing him in the hallway or in other common work areas, such as the time clock. Furthermore, a psychiatric expert testified that Stepic's lack of interpersonal skills could have led to his misinterpretation of the conduct, and Burke denied making any advances toward him.
 {¶ 9} On the evidence presented, the jury reasonably could have drawn a number of conclusions that would have defeated the claim, including: (1) that no sexual harassment occurred; (2) that even if some harassing conduct occurred, Penton addressed it when informed, followed up, and had no reason to believe that the harassment was continuing; or (3) that any harassing conduct was not severe or pervasive enough to warrant relief. Therefore, even if we accepted Stepic's claims that Penton failed to properly investigate his complaints, we would still affirm the jury's verdict because it could have concluded that no harassment occurred or that any inappropriate conduct was not severe or pervasive. The jury was not bound to accept the testimony of Stepic's witnesses when other evidence showed that the conduct could be rationally explained as something other than harassment.[8] The record before us does not show that the jury reached an unsupported conclusion, and we overrule the first assignment of error.
 II. EXCLUDED EVIDENCE {¶ 10} The second and third assignments both concern evidentiary questions, and we will address them together. A judge has discretion when admitting or excluding evidence, and we will not find error unless the judge abuses that discretion or commits an error of law.[9] The second assignment claims the judge erred in refusing to allow Stepic to present evidence of other sexual harassment complaints made at Penton in 1995 and 1996. These complaints concerned neither Stepic nor Burke, but he claims they were relevant to show the inadequacy of Penton's sexual harassment policies. Even if the incidents could be linked to a relevant purpose,[10]
this assignment fails because Stepic did not proffer the evidence he sought to admit. Prior to trial, the judge denied his "motion in limine to present evidence" and, although motions in limine normally seek to exclude evidence, this is a preliminary ruling.[11] In order to preserve error on such rulings, a party must renew an attempt to present evidence at trial and proffer excluded evidence for the record.[12]
Stepic did not attempt to introduce the evidence after the judge's ruling on the motion in limine, nor did he proffer the evidence he sought to introduce. Although a proffer is not always necessary,[13] its absence in this case prevents us from assessing whether error or prejudice occurred because the substance of the evidence is not sufficiently apparent to assess its relevance.[14] Therefore, any error was waived.
 {¶ 11} The next claim is that the judge erred in allowing evidence that Stepic was discharged for using profanity while excluding evidence that profanity was commonplace at Penton. Prior to trial the judge ruled that the parties could introduce evidence that Stepic was discharged and the reason for his discharge, but she also ruled that no further details of the discharge could be introduced, such as the Stepic I ruling that the discharge was lawful. During trial, however, the judge sustained objections to Stepic's attempts to show that profanity was commonplace at Penton, despite his argument that evidence of his discharge would be prejudicial without it. After this ruling Stepic testified, on direct examination, that he was discharged for using a racial slur in a company e-mail.
 {¶ 12} The judge found that evidence of the discharge was admissible as background information, but that extensive details would be irrelevant, just as she found that evidence of other profanity was irrelevant to the sexual harassment claim. Although Stepic apparently decided to present the evidence of his discharge on direct examination in order to blunt its effect, it is difficult to find that he preserved error on this claim because it is unclear how much evidence the judge would have allowed Penton to introduce. However, even if he did preserve this objection we find any error harmless because Penton did not seek to present further evidence of the discharge. The admission might have cast Stepic in a negative light, but we are not convinced that this single piece of collateral evidence had a significant effect on the jury's verdict.[15]
 {¶ 13} Stepic next claims the judge should have admitted evidence of a romantic letter or greeting card that he received from two female co-workers at Penton, although neither was Burke. He did not claim the card was part of his harassment, but claims the evidence was relevant to show the type of work climate allowed at Penton. Again, even if a relevant purpose could be found, the card was not proffered as an exhibit, it is not in the record, and we are unable to review it.[16]
The transcript contains only the revelation that the card is not from Burke, and on this evidence we cannot find that the judge abused her discretion in excluding it. We overrule the second and third assignments.
 III. EXPERT TESTIMONY {¶ 14} The fourth assignment of error claims the judge should not have allowed Penton to present an expert witness on sexual harassment policies and procedures because the expert's existence and his report were not disclosed until July 8, 2002, while trial began on July 17, 2002.[17]
A judge has discretion to provide remedies for discovery violations, and this discretion includes the authority to exclude witnesses.[18]
However, a witness should not be excluded if a less severe sanction will provide adequate relief.[19]
 {¶ 15} The judge ruled that Penton had not violated the discovery deadline because the case management order governing the retrial stated that expert reports were due by the final pretrial conference, which was held on July 10, 2002. The judge also found that Stepic was not prejudiced because trial did not begin until July 17, 2002, and he could have deposed the expert and made other adequate preparations within that time. We do not find the judge abused her discretion in making either finding.
 {¶ 16} In addition, Stepic had notice of the last date for exchange of expert reports because the preliminary case management order was filed on March 21, 2002, and finalized on May 16, 2002. He could have moved for an earlier deadline, as Penton did with respect to his expert reports, but he did not. Therefore, he is precluded from challenging the deadline here because he failed to bring it to the judge's attention.[20]
We overrule the fourth assignment of error.
Judgment affirmed.
PATRICIA A. BLACKMON, P.J., And SEAN C. GALLAGHER, J., Concur.
[1] Stepic v. Penton Media, Inc. (Dec. 14, 2000), Cuyahoga App. Nos. 77318, 77737 ("Penton I").
[2] C.E. Morris v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.
[3] Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 278-279,741 N.E.2d 155.
[4] Central Motors Corp. v. Pepper Pike, 73 Ohio St.3d 581, 584,1995-Ohio-289, 653 N.E.2d 639.
[5] Hampel v. Food Ingredients Specialties, Inc., 89 Ohio St.3d 169,2000-Ohio-128, 729 N.E.2d 726, paragraphs one and two of the syllabus.
[6] Id., paragraph five of the syllabus.
[7] Wille v. Hunkar Laboratories, Inc. (1998), 132 Ohio App.3d 92,104, 724 N.E.2d 492.
[8] Central Motors Corp., supra.
[9] Calderon v. Sharkey (1982), 70 Ohio St.2d 218, 222-223, 24 O.O.3d 322, 436 N.E.2d 1008; see, also, Rohde v. Farmer (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraphs one and two of the syllabus (abuse of discretion standard does not affect questions of law).
[10] Stepic's cited authorities generally concerns gender discrimination claims instead of sexual harassment, and his only cite relevant to a sexual harassment claim concerns evidence of victims who were harassed by the same perpetrator.
[11] Laubscher v. Branthoover (1991), 68 Ohio App.3d 375, 382,588 N.E.2d 290.
[12] Evid.R. 103(A); Campbell v. Johnson (1993), 87 Ohio App.3d 543,550-551, 622 N.E.2d 717.
[13] Laubscher, 68 Ohio App.3d at 383 and n. 1.
[14] Evid.R. 103(A).
[15] See Campbell, 87 Ohio App.3d at 551; Civ.R. 61.
[16] Campbell, supra.
[17] Stepic has not questioned whether the testimony was admissible under Evid.R. 702.
[18] Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 84-85, 19 OBR 123, 482 N.E.2d 1248.
[19] Billman v. Hirth (1996), 115 Ohio App.3d 615, 620,685 N.E.2d 1287.
[20] Goldfuss v. Davidson, 79 Ohio St.3d 116, 121, 1997-Ohio-401,679 N.E.2d 1099.