[Cite as *Darrah v. Baumberger*, 2017-Ohio-8025.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| GLENN R. DARRAH, ET AL., | ) | |
| | ) | |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | CASE NO. 15 MO 0002 |
| V. | ) | |
| | ) | OPINION |
| MARJORIE BAUMBERGER, ET AL., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Court of Common Pleas of Monroe County, Ohio Case No. 2014-186

JUDGMENT:      Reversed and Remanded

APPEARANCES:
For Plaintiffs-Appellees      Attorney Richard Yoss
Attorney Ryan Regal
122 North Main Street
Woodsfield, Ohio 43793-1002

For Defendants-Appellants      Attorney Mark Ropchock
One Cascade Plaza, Suite 2210
Akron, Ohio 44308-1135

JUDGES:

Hon. Gene Donofrio
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated: September 27, 2017

DONOFRIO, J.

{¶1} Defendants-appellants, Marjorie Baumberger, Donald Schnegg, and James Schnegg, appeal from a Monroe County Common Pleas Court judgment granting summary judgment in favor of plaintiffs-appellees, Glen Darrah, Kathie Darrah, Roger Darrah, and Susan Darrah, and finding that appellees are the rightful owners of a certain mineral interest.

{¶2} The parties stipulated to the following relevant facts.

{¶3} Appellees are the surface owners of a particular parcel of property located in Monroe County (the Property).

{¶4} Appellees' predecessors in title, William and Elizabeth Kindelberger, excepted and reserved certain oil and gas rights (Mineral Interest) in a 1908 warranty deed to Harry Blatter as follows:

> It is understood and agreed between the grantors and grantee that all the coal, together with the usual mining rights and privileges also one half of the oil and gas contained in or lying under said above described premises are excepted and reserved and not conveyed by these presents. In the event that any rental is paid on an oil or gas Lease, the grantors are to receive the one half of said rental.

(Reservation Deed).

{¶5} The mineral interest was transferred to Dorothy Caldwell and Elizabeth Caldwell by quitclaim deed in 1936. Appellants are the sole heirs of Dorothy Caldwell, who died November 3, 2012. Appellants claim to own an undivided ¼ interest in the oil and gas underlying the Property.

{¶6} On August 7, 2013, appellees filed an Affidavit of Abandonment stating that none of the saving events set out in R.C. 5301.56(B)(1) occurred in the 20 years preceding June 30, 2006 (the effective date of the 2006 Ohio Dormant Mineral Act). Therefore, they claimed that the Mineral Interest was abandoned and vested in them as the Property's surface owners pursuant to the 1989 Ohio Dormant Mineral Act (ODMA).

{¶7} Pursuant to the 2006 ODMA, on December 4, 2013, appellees served a Notice of Abandonment to those defendants whose addresses they could ascertain and on December 19, 2013, appellees served a Notice of Abandonment by publication.

{¶8} On January 9, 2014, appellants executed and recorded a Claim to Preserve.

{¶9} On February 14, 2014, appellees filed and recorded an Affidavit of Abandonment.

{¶10} On May 27, 2014, appellees filed a complaint seeking a declaratory judgment that they are the rightful owners of the mineral interest underlying the Property. They asserted claims under both the 1989 ODMA and the 2006 ODMA. They also raised a claim for slander of title. Finally, they raised a claim that because the Reservation Deed did not contain words of inheritance, it only reserved a life estate in William and Elizabeth Kindelberger that expired at their deaths.

{¶11} Appellants filed an answer and counterclaim. They too sought a declaratory judgment that they are the rightful owners of the mineral interest underlying the Property. And they too asserted claims under both the 1989 ODMA and the 2006 ODMA.

{¶12} The parties filed competing motions for summary judgment and an agreed Stipulation of Facts.

{¶13} The trial court granted summary judgment in appellees' favor. In so doing, it found that the 1989 ODMA was self-executing and was constitutional. Relying on the 1989 ODMA, the court found that none of the savings events occurred within the 20-year lookback period. Therefore, the court found that the 1989 ODMA operated to have the Mineral Interest deemed abandoned and vested in appellees as the surface owners as of March 22, 1992.

{¶14} Appellants filed a timely notice of appeal on March 9, 2015. This court held the appeal in abeyance pending the Ohio Supreme Court's decisions in several oil and gas cases. This case is now ready for review. Appellants raise a single

assignment of error.

**{¶15}** Appellants' sole assignment of error states:

THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEES BASED UPON THE 1989 [sic] VERSION OF THE DORMANT MINERAL ACT, WHICH THE TRIAL COURT BELIEVED TO BE "SELF EXECUTING."

**{¶16}** In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶17}** Appellants argue the trial court erred in granting summary judgment to appellees based on the 1989 ODMA. They contend that based on the Ohio Supreme Court's decision in *Corban v. Chesapeake Expl., L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, the 2006 ODMA controls this case.

**{¶18}** Moreover, appellants argue that they complied with the 2006 ODMA by filing a Preservation Notice Affidavit on January 9, 2014, in response to appellees' Notice of Abandonment. Appellants claim that pursuant to *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, their claim to preserve (as the mineral interest holders) under R.C. 5301.56(H)(1)(a) was sufficient to preclude the

mineral interest from being abandoned.

**{¶19}** In *Corban*, 149 Ohio St.3d at ¶ 26-28, the Ohio Supreme Court held that the 1989 ODMA was not self-executing and did not automatically transfer a mineral rights interest from the mineral rights holder to the surface owner by operation of law. Instead, a surface owner seeking to merge those rights with the surface estate under the 1989 ODMA was required to commence a quiet title action seeking a decree that the dormant mineral interest was deemed abandoned. *Id.* at ¶ 28.

**{¶20}** The 2006 ODMA provides that a dormant mineral interest "shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied." *Id.* at ¶ 29; R.C. 5301.56(B). The Court went on to hold:

> Dormant mineral interests did not automatically pass by operation of law to the surface owner pursuant to the 1989 law. Thus, as of June 30, 2006, any surface holder seeking to claim dormant mineral rights and merge them with the surface estate is required to follow the statutory notice and recording procedures enacted in 2006 by H.B. 288. These procedures govern the manner by which mineral rights are deemed abandoned and vested in the surface holder and apply equally to claims that the mineral interests were abandoned prior to June 30, 2006.

*Id.* at ¶ 31.

**{¶21}** The Ohio Supreme Court reiterated its holding stating "the 2006 version of the Dormant Mineral Act applies to all claims asserted after 2006 alleging that the rights to oil, gas, and other minerals automatically vested in the owner of the surface estate prior to the 2006 amendments." *Walker v. Shondrick-Nau*, 149 Ohio St.3d 282, 2016-Ohio-5793, 74 N.E.3d 427, ¶ 16, citing *Corban* at ¶ 2.

**{¶22}** Based on *Corban*, the trial court's grant of summary judgment must be

reversed because it relied on the 1989 ODMA.

**{¶23}** Appellees admit that, based on *Corban*, their claim under the 1989 ODMA must fail and that the 2006 ODMA applies to this case. Appellees go on, however, to argue that prior to *Corban*, vested rights were created in property owners and that taking those vested rights away constitutes an unconstitutional taking. They assert that the Ohio Supreme Court, on behalf of the State of Ohio, took the property rights that had vested in surface owners and conveyed those interests to other people. Therefore, appellees claim that the *Corban* decision is unconstitutional.

**{¶24}** An appellate court is an intermediate court and is therefore bound by Ohio Supreme Court decisions. *Davis v. Montenery*, 173 Ohio App.3d 740, 2007-Ohio-6221, 880 N.E.2d 488, ¶ 31 (7th Dist.). An appellate court cannot overrule an Ohio Supreme Court decision or declare an Ohio Supreme Court decision unconstitutional. *State v. Sheets*, 12th Dist. No. CA2006-04-032, 2007-Ohio-1799, ¶ 16.

**{¶25}** Based on the above, this court cannot declare *Corban* unconstitutional as appellees wish.

**{¶26}** Next, appellees argue that this case presents a different type of claim than the one in *Dodd v. Croskey*, supra. Appellees claim that the mineral interest has been abandoned under R.C. 5301.56(B)(3)(e) in this case as opposed to under R.C. 5301.56(H)(1) as was in *Dodd*. They argue that the filing of a claim to preserve under (H)(1)(a) does not have the same effect as a claim to preserve under (B)(3)(e).

**{¶27}** The question before the Ohio Supreme Court in *Dodd* was "whether a mineral-interest holder's claim to preserve a mineral interest from being deemed abandoned in accordance with R.C. 5301.56(H)(1)(a) is sufficient to preserve that interest if the claim was filed after notice of the surface owner's intent to declare the mineral interest abandoned and outside the 20-year window immediately preceding that notice." *Dodd*, 143 Ohio St.3d at ¶ 1. The court answered the question in the affirmative.

**{¶28}** On appeal to the Ohio Supreme Court, the Dodd appellants argued that

the Croskey affidavit was not sufficient by itself to preclude abandonment because it was filed after the appellants' notice of abandonment was published. *Id.* at ¶ 23.

**{¶29}** In addressing this argument, the Court looked to the ODMA. It pointed out that before mineral interests can be vested in the surface owner, the surface owner must complete two tasks. *Id.* at ¶ 26, citing R.C. 5301.56(E). First, the surface owner must serve notice of the intent to declare the mineral interest abandoned on the mineral interest holders pursuant to the statutory requirements. *Id.*, citing R.C. 5301.56(E)(1). Then between 30 and 60 days after the notice is served or published, the surface owner must file and record an affidavit of abandonment that meets the statutory requirements. *Id.*, citing R.C. 5301.56(E)(2) and (G).

**{¶30}** The Court next reiterated that there are two ways for a mineral interest holder to assert that a mineral interest has not been abandoned after notice of abandonment: (1) the holder of the mineral interest can file a claim to preserve in accordance with R.C. 5301.56(H)(1)(a); or (2) the holder can file an affidavit describing a savings event that occurred in the 20 years preceding the notice. *Id.* at ¶ 27. The Court also noted that a claim to preserve must meet R.C. 5301.56(C)'s requirements by: (1) stating the nature of the mineral interest claimed and any recording information upon which the claim is based; (2) complying with R.C. 5301.52; and (c) stating that the holder does not intend to abandon, but instead to preserve, the holder's rights in the mineral interest. *Id.* at ¶ 28.

**{¶31}** The court then went on to hold:

> Reading the statute as a whole, *we conclude that the plain language of the Dormant Mineral Act permits a mineral-interest holder's claim to preserve to serve two separate but similar functions depending on when it is filed for record: one as a saving event under R.C. 5301.56(B)(3)(e) when filed in the 20 years preceding notice and another to preclude the mineral interest from being deemed abandoned under R.C. 5301.56(H)(1)(a) when filed within 60 days after service of*

*the surface owner's notice.* Nothing in the act states that a claim to preserve filed under R.C. 5301.56(H)(1)(a) must refer to a saving event that occurred within the preceding 20 years. Nor do the notice procedures in R.C. 5301.56(H)(1)(a) require that the claim to preserve be itself filed in the 20 years preceding notice by the surface owner. The statute plainly states that such a claim can be filed within 60 days after notice. R.C. 5301.56(H). Thus, to preserve the mineral holder's interests, the plain language of R.C. 5301.56(H) permits either a claim to preserve the mineral interest or an affidavit that identifies a saving event that occurred within the 20 years preceding notice.

(Emphasis added); *Id.* at ¶ 30.

**{¶32}** Additionally, this court recently found the same argument appellees now make regarding R.C. 5301.56(B)(3)(e) and R.C. 5301.56(H)(1)(a) to be without merit. *Bayes v. Sylvester*, 7th Dist. No. 13 MO 0020, 2017-Ohio-4033.

**{¶33}** Appellees' argument is resolved by the Ohio Supreme Court's decision in *Dodd*. Here, appellees published a notice of abandonment on December 19, 2013. Thus, appellants had 60 days from that date to file either an affidavit or a claim of preservation. They timely filed a claim of preservation on January 9, 2014. By filing the claim of preservation within 60 days of publication of notice, appellants halted the abandonment process instituted by appellees.

**{¶34}** Finally, appellees assert that because the trial court based its judgment on the 1989 ODMA, it never reached their argument regarding the absence of words of inheritance in the mineral reservation (Count IV of their complaint). Appellees contend that because the reservation failed to contain words of inheritance, the mineral interest was extinguished upon the deaths of William and Elizabeth Kindelberger and reunited with the surface estate. Therefore, they assert we should remand this matter to the trial court to allow further proceedings on Count IV of their complaint.

**{¶35}** Prior to the enactment of G.C. 8510-1, now R.C. 5301.02, on June 13,

1925, if a reservation in a deed was to be anything other than a life estate in the grantor, the deed had to have contained words of inheritance. *Holdren v. Mann*, 7th Dist. No. 592, 1985 WL 10385, *1 (Feb. 13, 1985). On the other hand, if the deed contained an exception, it left title to that part of the realty excepted in the grantor and words of inheritance were not required. *Id.*

**{¶36}** This court previously discussed in detail the difference between a "reservation" and an "exception" in a deed:

> A reservation by definition is a "creation of a new right or interest (such as an easement) by and for the grantor, in real property being granted to another." Black's Law Dictionary (8th Ed.2004) 1333. An exception is the "retention of an existing right or interest, by and for the grantor, in real property being granted to another." *Id.* at 604. * * *

> "Although the terms 'excepting' and 'reserving' mean different things, the two terms are often employed 'indiscriminately.' *Ricelli v. Atkinson* (1955), 99 Ohio App. 175 [58 O.O. 305, 132 N.E.2d 123]. As a result, the terms employed, in and of themselves, do not definitively establish whether an exception or a reservation has been created. * * * Thus, 'whether the language creates a reservation or an exception depends upon the intention of the parties as evinced by a construction of the whole instrument in light of the circumstances of the case rather than upon the particular words used.' *Id.* at 179 [58 O.O. 305, 132 N.E.2d 123], citing *Gill v. Fletcher* (1906), 74 Ohio St. 295 [78 N.E. 433]; *Akron Cold Spring Co. v. Unknown Heirs of Ely* (1923), 18 Ohio App. 74. 'In case of doubt, it is said, the conveyance is to be construed most strongly as against the grantor, or in favor of the grantee on the theory, it seems, that the words used are to be regarded as the words of the grantor rather than of the grantee. Applying this rule, an exception or reservation in a conveyance is construed in favor of the grantee rather than of the grantor.' *Pure Oil Co. v. Kindall* (1927), 116

Ohio St. 188, 203 [156 N.E. 119], quoting 2 Tiffany, Real Property (2 Ed.Rev.1920), Section 437." *Campbell v. Johnson* (1993), 87 Ohio App.3d 543, 547, 622 N.E.2d 717.

*Am. Energy Corp. v. Datkuliak*, 174 Ohio App.3d 398, 2007-Ohio-7199, 882 N.E.2d 463, ¶¶ 74-75 (7th Dist.).

**{¶37}** In this case, the Reservation Deed stated that "the oil and gas contained in or lying under said above described premises are *excepted and reserved.*" (Emphasis added).

**{¶38}** Appellees did not move for summary judgment on this count of their complaint. Likewise, the trial court did not address this count of appellees complaint when ruling on the summary judgment motions. The proper remedy here is to remand this matter to the trial court for further proceedings on Count IV of appellees' complaint.

**{¶39}** Accordingly, appellants' sole assignment of error has merit and is sustained.

**{¶40}** For the reasons stated above, the trial court's judgment is hereby reversed and the matter is remanded. On remand, the trial court shall determine whether the mineral reservation created an exception or a reservation and proceed under the 2006 Ohio Dormant Mineral Act.

DeGenaro, J., concurs.

Robb, P.J., concurs.